1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSE VICTOR GOMEZ,                        No.  2:17-cv-00305 JAM KJN

12                   Petitioner,

13           v.                                 FINDINGS & RECOMMENDATIONS

14    S. SHERMAN, Warden,

15                   Respondent.

16

17    I.  Introduction

18           Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2013 conviction for

20    numerous sex crimes against his minor daughters.  Petitioner was ultimately sentenced to a total

21    of 185 years-to-life in state prison.  Petitioner claims that the admission of an uncharged act

22    rendered the trial fundamentally unfair in violation of his constitutional right to due process, that

23    the trial court's failure to instruct on a lesser included offense deprived him of a state-created

24    liberty interest in violation of his constitutional right to due process, and that his due process

25    rights were violated with his conviction pursuant to count eleven because it did not allege a public

26    offense.  After careful review of the record, this court concludes that the petition should be

27    denied.

28    ////

II.  <u>Procedural History</u>

On November 2, 2012, a jury found petitioner guilty of eight counts of lewd and lascivious conduct upon a child under fourteen, two counts of sexual intercourse with a child ten years of age or younger, and two counts of oral copulation with a child ten years of age or younger; the jury also found true an enhancement that the offenses were committed against two or more minors.  (ECF No. 16-2 at 34-45.)[1]  On January 4, 2013, petitioner was sentenced to 200 years-to-life in state prison.  (ECF No. 16-2 at 78-80.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  (ECF No. 16-6.)  The Court of Appeal reversed count ten for a lack of substantial evidence and modified the sentence to 185 years-to-life, but otherwise affirmed the conviction on February 3, 2016.  (ECF No. 13, Ex. A at 30-54.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on April 13, 2016.  (ECF No. 16-10.)

Petitioner filed the instant petition on February 13, 2017.  (ECF No. 1.)

III.  <u>Facts</u>[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual background:

> Defendant and a woman named Kristy had two daughters. E. was 13 years old and K. was 10 years old at the time of the trial in 2012.
>
> E. disclosed to Kristy on June 30, 2011, that defendant had sexual intercourse with her. That was the first time E. told Kristy about any sexual misconduct by defendant. Kristy reported the misconduct to police that day. The police interviewed E., but did not have E. submit to a sexual assault examination in part because the last reported act of sexual assault occurred two or three years prior to E.'s disclosure.
>
> Kristy made a pretext call to defendant at the request of the police. Defendant admitted to Kristy that E. put on dresses and danced

---

[1]  The page numbers cited refer to those numbers assigned by the court's electronic filing system.

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Gomez</u>, No. C072915, 2016 WL 402874, dated February 3, 2016, a copy of which was lodged by respondent as Exhibit A to its Amended Answer dated June 9, 2017.

provocatively for him. He admitted apologizing to E. because she said he groped her. Defendant said he promised E. he would not do anything like that again. Defendant denied having sexual intercourse with E. or having E. lick jelly off his penis. He denied doing the other things E. reported, but said he did not remember what happened because he was doing a lot of drugs and was not sober "back in the day." The People played an audio recording of the pretext call during the trial.

Police arrested defendant after the pretext call. They found pornographic magazines and movies during a search of defendant's home. No pornographic images involving children were found on defendant's home computer or cell phone.

Defendant agreed to speak with detectives after he was advised of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].) Detective Anthony Saika opined defendant did not exhibit any signs of being under the influence of alcohol or drugs at the time of his arrest or during his interrogation.

Defendant made a number of admissions during the interrogation. He admitted the following: E. orally copulated him multiple times. E. sucked his penis after jelly was applied to his penis. E. "rode" or "dry humped" him a few times, and he ejaculated probably twice. There was skin to skin contact between his penis and E.'s vagina when he had E. "ride the horse," although his penis did not go in E.'s vagina. E. dressed up in costumes and danced for defendant. Defendant slapped E.'s butt. Defendant made promises to E., like promising to take her to the park, in exchange for sexual acts. Defendant apologized to E. for the things he did to her, and he promised not to do those things anymore after E. had panic attacks. Defendant denied using dildos with E. or showing her pornographic movies. Defendant said he was ashamed. He told the interrogating officers, "I pretty much screwed myself telling you everything."

A videotape of the statement defendant gave police was played at the trial.

Defendant called Kristy from jail. He told Kristy he was not mad at Kristy or E., and he was glad E. said something because he wanted to tell Kristy and felt guilty. The People played an audio recording of that telephone call at the trial.

A forensic interview specialist interviewed E. and K. K. did not disclose any sexual conduct by defendant during her initial interview. But K. was re-interviewed after she disclosed to E. that defendant had touched her in a bad way. K. disclosed at her second interview that when she was eight years old, defendant rolled a massager over her private part and instructed her to roll the massager on his penis. A videotape of K.'s second interview was played at the trial.

E. testified at the trial. She described numerous sexual acts with defendant, recounting the following:

When E. was in preschool or kindergarten, defendant put grape or

strawberry jelly on his penis and had E. lick the jelly off his penis. E. saw white liquid come out of defendant's penis. The liquid went into a washrag or sock. Afterward, defendant praised E. and gave her a kiss on her head. That sexual act occurred more than three times.

On one occasion, defendant got on top of E., instructed her to wrap her legs around him, and defendant inserted his penis inside E. E. kept trying to get up because it felt very uncomfortable for her, but defendant pulled her back down. E. felt pain. E. was in preschool or kindergarten at the time.

Defendant had E. do something defendant called "ride the pony" on more than 10 occasions. Defendant put his penis inside E.'s vagina during a "ride the pony" incident when E. was seven or eight years old. E. also recalled a position defendant called "something about a dog" where E. was on her hands and knees and defendant inserted his penis inside her from behind, causing E. pain.

When E. was less than nine years old, defendant put a clear liquid on his penis and inserted his penis inside E.'s vagina while defendant was behind E. Defendant put his penis inside E. multiple times, going in and out, until white stuff came out. E. felt discomfort and some pain.

On one occasion in 2008 or 2009, defendant got into E.'s bed after Kristy had left for work. Defendant put his penis inside E. from behind.

On more than five occasions, defendant made E. dress up in outfits and dance for him. Defendant masturbated on his bed while E. danced. Defendant also showed E. pornographic movies.

E. also testified about sex toys. She said defendant put a pink vibrator inside or near her vagina. E. could not remember if there was more than one incident involving the pink vibrator. E. remembered a red dildo, but at trial she did not remember how defendant used the red dildo.

Defendant promised to take E. swimming or to the park or to give E. money in exchange for some of the sexual acts she performed. Defendant told E. something to the effect that he deserved it and he had been a good dad all week.

E. told a friend she was being touched inappropriately when she was in kindergarten. When grown-ups questioned her, however, E. lied and denied anything happened.

The sexual conduct with defendant stopped when E. was in fourth or fifth grade. At that time E. was stressed and kept vomiting. E. did not tell Kristy what was going on because E. was afraid. Instead, E. talked to defendant, and defendant promised he would stop. Although the sexual acts stopped, defendant grabbed or smacked E.'s butt whenever he passed her.

K. also testified at the trial. She said defendant used a massager to

4

rub her private part, then instructed K. to use the massager on his penis and K. complied. K. was eight when the incident occurred.

In 2010, defendant's niece S. accused defendant of sexual misconduct against her when she was three to five years old. S. is the daughter of defendant's brother. S. was 17 years old when she testified at the trial as follows: She lived in the same house as defendant when she was three or four years old. Defendant had S. perform oral sex on him more than once when she was between three and five years old and he babysat her. Defendant placed something that tasted like cherries on his penis on those occasions. Defendant did not ejaculate in S.'s mouth. After S. performed oral sex on defendant, defendant praised S. and gave her a dollar bill that was folded into a ring. S. stopped living with defendant when she was five years old. She did not tell anyone about what happened until 2010, when she was 15 years old and had panic attacks. Her aunt Alma asked her if anything had ever happened to her. S. reluctantly told her aunt about what defendant had done to her.

Defendant testified at the trial. He said he used methamphetamine and marijuana and had been drinking alcohol on the day of his arrest. He said he felt sick during his interrogation. He claimed he told the interrogating officers what they wanted to hear because he wanted the questioning to stop. Defendant testified that the admissions he made during his interrogation were false.

Defendant said the allegations made against him by E. and K. were lies. He denied the sexual acts E. and K. described. He said he lied during the pretext call when he admitted groping E. and when he said he saw E. playing with a red dildo. He said E. had panic attacks when he and Kristy separated. He denied ever talking to E. about not touching E. anymore. He suggested K. made up what she reported because she received gas during a dental procedure and was "a little spacey" afterwards. Defendant also denied any sexual contact with S.

Defendant presented Dr. James Crawford–Jakubiak as an expert on child sexual assault. The doctor said that while a sexual assault examination may show prior injury to the hymen, the majority of injuries to the vagina heal in a matter of days to weeks and leave no trace of injury. The doctor agreed that sometimes no injury results even when penetration of the labia majora and labia minora occurred. He opined that the vast majority of children who disclose sexual abuse in the past had normal or nonspecific exams when they were evaluated. He also opined it was not uncommon for child victims to delay in disclosing sexual abuse or to not disclose everything that happened all at once.

Defendant also called Dr. John Shields, a forensic psychologist. Dr. Shields opined, based on the result of tests he administered on defendant, that defendant was significantly more suggestible than most people. The doctor opined that defendant was very vulnerable to suggestion in the course of an interview. He added that people who score high on the type of suggestibility test he administered were more likely to give an unreliable admission.

1    (People v. Gomez, slip op. at 2-7.)

2    IV.  Standards for a Writ of Habeas Corpus

3         An application for a writ of habeas corpus by a person in custody under a judgment of a

4    state court can be granted only for violations of the Constitution or laws of the United States.  28

5    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6    application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

7    U.S. 62, 67-68 (1991).

8         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

9    corpus relief:

10                An application for a writ of habeas corpus on behalf of a person in
                  custody pursuant to the judgment of a State court shall not be granted
11                with respect to any claim that was adjudicated on the merits in State
                  court proceedings unless the adjudication of the claim -
12
                       (1) resulted in a decision that was contrary to, or involved an
13                unreasonable application of, clearly established Federal law, as
                  determined by the Supreme Court of the United States; or
14
                       (2) resulted in a decision that was based on an unreasonable
15                determination of the facts in light of the evidence presented in the
                  State court proceeding.
16

17   28 U.S.C. § 2254(d).

18        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

19   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

20   Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

21   38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

22   Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

23   what law is clearly established and whether a state court applied that law unreasonably."  Stanley,

24   633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

25   precedent may not be "used to refine or sharpen a general principle of Supreme Court

26   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall

27   v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per

28   curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted

among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous."'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter, 562 U.S. at 103.

---

[3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. *The Uncharged Act Evidence*

Petitioner claims that his constitutional rights to due process and a fair trial were violated by the trial court's ruling, pursuant to California Evidence Code §§ 1101 and 1108, allowing for evidence of an uncharged act involving his niece S. (ECF No. 1 at 5-6 & ECF No. 20 at 17-60.) Respondent maintains that petitioner cannot overcome the restrictions imposed by § 2254(d) because there is no controlling Supreme Court authority on this issue, and that even were there Supreme Court precedent, petitioner cannot show that "no fairminded jurists could have agreed with the state courts." (ECF No. 13 at 13-19.)

Preliminarily, the court notes that petitioner filed a seventy-three-page traverse on November 27, 2017. (ECF No. 20.) To the extent petitioner is attempting to belatedly raise new claims in the traverse, those claims should be denied. A traverse is not the proper pleading to

raise additional grounds for relief.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("[w]e review only issues which are argued specifically and distinctly in a party's opening brief").  Further, where the traverse addresses the same claims as presented in the original habeas petition, the undersigned has considered petitioner's arguments whether specifically referenced or cited herein.

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant claims the trial court abused its discretion in admitting evidence of uncharged sexual conduct.
>
> A
>
> The People moved to admit evidence that defendant committed sexual offenses against S. under Evidence Code section 1108 to show defendant had a propensity to engage in the sexual offenses charged in this case and defendant committed the charged offenses. The People also sought to admit the evidence relating to S. under Evidence Code section 1101, subdivision (b) to show intent, method of operation, and absence of mistake.
>
> The parties presented the following facts to the trial court. S. was defendant's niece. Defendant and S. lived in the same house at the time of the alleged misconduct. Defendant allegedly had S. orally copulate him when she was between two and five years old. Defendant put a substance that tasted like cherries on his penis. He allegedly told S. she had done a good job after she orally copulated him. And he gave her a dollar bill fashioned into a ring to thank her. S. reported the alleged acts to police in July 2010, when she was 14 or 15 years old. Defendant was not prosecuted based on S.'s accusation.
>
> E. was defendant's biological daughter. She alleged defendant molested her on multiple occasions starting when E. was in preschool and ending when E. was in third or fourth grade. Among other things, defendant allegedly had E. lick strawberry or grape jelly off defendant's penis on multiple occasions. The alleged sexual acts occurred in defendant and E.'s home. E. reported the misconduct on June 30, 2011, when she was 12 years old.
>
> The trial court admitted the evidence relating to S. under Evidence Code section 1101, subdivision (b), to show defendant's intent and

the absence of mistake. The trial court also admitted the evidence under Evidence Code section 1108 to show defendant's propensity to commit the charged crimes. Regarding Evidence Code section 352, the trial court concluded the probative value of the evidence relating to S. was not substantially outweighed by the probability that its admission would necessitate undue consumption of time or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. The trial court ruled the charged and uncharged offenses were similar in that S. and E. were similar in age at the time of the alleged misconduct; S. and E. were related to the defendant; the alleged acts occurred in the girls' homes where defendant had access to them; and defendant placed a flavored substance on his penis before S. and E. orally copulated him. The trial court said the uncharged acts were probative on the issues of intent, absence of mistake, and refuting defendant's claim that he did not know what he was doing during the incidents. As for prejudice, the trial court concluded the uncharged acts were not more inflammatory than the charged acts because the uncharged acts were less in number and did not involve a biological child; the evidence was not remote in relation to the charged acts; and admission of the evidence would not cause an undue consumption of time at the trial because the People would call only two witnesses: S., who was not expected to recant, and possibly the witness who took S.'s statement. The trial court said it considered the fact that the uncharged acts did not result in a conviction, but giving the CALCRIM No. 375 instruction would minimize the risk of confusion or that the jury would be tempted to punish defendant for the uncharged offenses.

## B

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid.Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But Evidence Code section 1108 provides that when the defendant is charged with a sexual offense, evidence of the defendant's other sexual offenses is not made inadmissible by Evidence Code section 1101 if the evidence is not inadmissible under Evidence Code section 352.

In enacting Evidence Code section 1108, the Legislature recognized that "'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.'" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164 (*Villatoro*); *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the

defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1160, 1164, 1166–1167; *Falsetta*, *supra*, 21 Cal.4th at pp. 911–912, 922.)

However, uncharged sexual conduct evidence is inadmissible if the probative value of the evidence is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid.Code, §§ 352, 1108, subd. (a).) The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense. (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) The prejudicial impact of uncharged sexual conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act. (*Ibid.*) We review a trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

As defendant acknowledges, the charged and uncharged offenses in this case are similar. Similarity between the charged and uncharged offenses is a factor for a trial court to consider in weighing the probative value and prejudicial impact of the uncharged conduct evidence pursuant to Evidence Code section 352. (*Falsetta*, *supra*, 21 Cal.4th at p. 917; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).) E. and S. were about the same age when defendant had them orally copulate him. Defendant lived in the same household with each girl at the time of the sexual acts, and defendant was related to the girls by blood. The charged and uncharged offenses involve the same sexual act. Defendant had both girls orally copulate him on multiple occasions. He applied a fruit-flavored jelly to his penis and had the girls lick off the jelly. The sexual acts occurred in the home defendant shared with each girl when defendant was watching the child. Defendant concedes that the similarities between the charged and uncharged offenses give the uncharged conduct evidence probative value on the issues of defendant's propensity to commit the charged sexual offenses, intent, and common plan or scheme.

Evidence of the uncharged offenses is also probative because defendant denied engaging in any sexual acts with E. or K. At trial

defendant's counsel attacked the credibility of E. and K. and suggested their allegations of sexual misconduct were concocted. As defense counsel pointed out to the jury, there was no physical evidence defendant had sexual intercourse with E. Uncharged sexual offense evidence is highly probative where the defendant denies the charged offense occurred and there is no forensic evidence proving the charged offense occurred. (*Robertson*, *supra*, 208 Cal.App.4th at p. 993; *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1275 [evidence of prior sexual offense was probative where the defendant claimed the victim's report of a forcible sexual assault was concocted]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 (*Waples*) [propensity evidence was highly relevant where the defense attempted to paint the complainant as a liar or mistaken in her report].)

Defendant argues the probative value of the uncharged conduct evidence is reduced because S. and E. are related and thus are not independent witnesses. "The term 'independent' ordinarily means '[f]ree from the influence, guidance, or control of another or others' or '[n]ot determined or influenced by someone or something else.'" (*Estate of Winans* (2010) 183 Cal.App.4th 102, 120; *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) Nothing in the record shows S. influenced E.'s allegations against defendant or E. influenced S.'s allegations. There is no evidence E. was aware of the details of S.'s accusations regarding oral copulation when E. disclosed to Kristy. S.'s trial testimony supports our conclusion. S. testified she was not close to E., and never told E. or K. about what happened between her and defendant. E. similarly testified she did not know the details of what defendant did to S. S. reported defendant's conduct against her in 2010, before E. disclosed that defendant had sexually abused her. The independent sources of the evidence supporting the charged and uncharged sexual conduct enhanced the probative value of the evidence relating to S.

Defendant further claims the three- to nine-year gap between the charged and uncharged conduct and the fact that defendant was a juvenile when the uncharged sexual acts occurred reduced the probative value of the uncharged conduct evidence.

There is no bright line rule regarding whether a prior act is too remote to be admissible under Evidence Code section 352. (*Ewoldt*, *supra*, 7 Cal.4th at p. 405 [uncharged act occurred 12 years prior to trial]; *People v. Branch* (2001) 91 Cal.App.4th 274, 278, 281, 284 [uncharged sexual acts committed over 30 years before the charged offenses occurred were properly admitted under Evidence Code sections 1101 and 1108]; *Waples*, *supra*, 79 Cal.App.4th at pp. 1392–1393, 1395 [uncharged sexual acts that occurred 18 to 25 years before the charged offenses were not too remote for purposes of

Evidence Code section 352]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977–978, 990–992 [uncharged sexual conduct that occurred 20 to 30 years before the trial were properly admitted under Evidence Code sections 1108 and 352].) The facts before the trial court were that the uncharged acts occurred from 1997 to 2000, and the sexual acts with E. started in 2003 or 2004. A three- or four-year gap between the end of the uncharged conduct and the beginning of the charged conduct is not so significant as to reduce the probative value of the uncharged conduct evidence. Additionally, the significant similarities between the prior and the charged offenses balanced out any remoteness between the charged and uncharged conduct. (*Branch*, *supra*, 91 Cal.App.4th at p. 285.)

With regard to defendant's contention that his youth at the time of the uncharged offenses reduced the probative value of the evidence relating to S., defendant did not assert such claim in the trial court. There is also nothing in the record to indicate the uncharged sexual conduct occurred during "a period of aberrant behavior in youth," as defendant claims. We do not consider those claims. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243 [we review the correctness of the trial court's ruling at the time it was made, not by reference to evidence produced at a later date]; *Robertson, supra*, 208 Cal.App.4th at p. 991.)

Defendant further attacks the probative value of the evidence relating to S. by pointing out that S. delayed in disclosing the uncharged sexual conduct and that she was going to testify about events that occurred 12 to 15 years before the trial. Those facts affected the weight of S.'s proposed testimony. But defendant had an opportunity to test S.'s memory about what defendant allegedly did to her and to challenge S.'s credibility. And the jury could assess S.'s credibility. Further, the trial court instructed the jury pursuant to CALCRIM No. 226 that it may consider factors, including how well the witness was able to remember and describe what happened, in evaluating the witness's testimony. (Evid.Code, § 780; *People v. Rincon–Pineda* (1975) 14 Cal.3d 864, 883–884.) The instruction helped assure jury consideration of any remoteness of the uncharged conduct evidence.

With regard to the factors pertinent to an assessment of the prejudicial effect of the uncharged sexual conduct evidence, defendant argues admission of the uncharged conduct evidence was prejudicial because it was more inflammatory than the charged offenses and its admission created a risk the jury would convict defendant to punish him for his prior offenses.

S.'s proposed testimony did not describe acts that were more inflammatory than the anticipated testimony concerning the charged offenses. The charged offenses alleged a greater variety of sexual

14

acts and more serious offenses than the uncharged offenses, including sexual intercourse with a child. (§§ 288, subd. (a) [punishment for lewd or lascivious acts upon a child who is under the age of 14 years is three, six, or eight years in prison]; 288.7, subd. (a) [punishment for sexual intercourse with a child who is 10 years of age or younger is 25 years to life in prison].)

The trial court considered the risk that the jury would be tempted to punish defendant for the uncharged sexual offenses because defendant was not prosecuted for those alleged acts. It determined that giving the CALCRIM No. 375 instruction would minimize any risk the jury would be tempted to punish defendant for the uncharged offenses. The trial court in fact instructed the jury on the limited use of uncharged conduct evidence. The trial court also instructed the jury on the elements of each charged offense, and said the People must prove each charge beyond a reasonable doubt and the uncharged conduct evidence does not, by itself, prove defendant was guilty of the charged offenses. As instructed, the jury was not permitted to convict defendant of the current charges simply because he previously committed sexual offenses. The instructions counterbalanced any risk the jury might punish defendant for his uncharged acts. (*Falsetta*, *supra*, 21 Cal.4th at p. 920; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.) Defendant fails to demonstrate the trial court's assessment was an abuse of its discretion.

Moreover, the record indicates the uncharged conduct evidence did not result in prejudice. The jury questions during deliberations suggest the jury did not refer to defendant's uncharged acts. We see nothing in the record to suggest the jury convicted defendant because it wanted to punish him for his conduct against S.

Defendant also argues admission of the uncharged conduct evidence was prejudicial because it painted defendant as a serial child molester. But the prosecutor did not label defendant a serial child molester. (*People v. Rogers* (2013) 57 Cal.4th 296, 331.) While admission of other sexual offense evidence could create a risk the jury would perceive the defendant as a serial sexual offender, the Legislature nonetheless authorized the admission of such propensity evidence. (Evid.Code, § 1108.) The admission of uncharged sexual offense evidence under Evidence Code section 1108 is not treated as per se unduly prejudicial. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1160, 1164; *Falsetta*, *supra*, 21 Cal.4th at pp. 911, 916–917.) And the California Supreme Court recognized additional instances of similar misconduct can increase the probative value of uncharged conduct evidence. (*Ewoldt*, *supra*, 7 Cal.4th at pp. 404–405.) Here, the uncharged conduct evidence was not unduly prejudicial.

We conclude the trial court did not abuse its discretion in admitting the uncharged sexual conduct evidence.

(People v. Gomez, slip op. at 8-15.)

## Legal Authority & Analysis

California Evidence Code § 1108 allows the prosecution to prove a defendant's propensity to commit sex crimes by offering evidence that he has committed other sex crimes. It is an exception to the general rule, reflected in § 1101,[4] that propensity evidence is not admissible. See Cal. Evid. Code, §§ 1101(a), 1108(a). The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[5] Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a).

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. See Knowles v. Mirzayance, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented,...it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets & quotations omitted). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the

_____

[4] California Evidence Code § 1101(a) states, "[e]xcept as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

[5] California Evidence Code § 352 states, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

16

wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).

Petitioner cannot prevail on this claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." Lincoln v. Sunn, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief. See Estelle, 502 U.S. at 67-68. Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108. See, e.g., Greel v. Martel, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process") (quoting Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution); Sanches v. Hedgpeth, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional"); Mejia, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

Indeed, petitioner cannot demonstrate that the trial court committed error. This record reflects that the trial court properly weighed the evidence against its potential to cause prejudice and instructed the jury that it may, but was not required, to infer from the evidence that he had a disposition to commit sexual offenses. See People v. Robertson, 208 Cal.App.4th 965, 993 (2012) ("[s]ince appellant flatly denied raping the victim in this case and there was no forensic evidence proving that a rape occurred, evidence bearing on the respective credibility of appellant and the victim was highly probative. Testimony that appellant committed a similar sexual assault

on another woman was relevant to prove common plan and to bolster the victim's credibility.  It was also relevant to prove appellant's disposition to commit sexual offenses on women").

Thus, the admission of the alleged sexual offenses did not violate due process because it is permissible for a jury to infer a petitioner's propensity to commit a sexual offense from prior sexual offenses.  See United States v. LeMay, 260 F.3d 1018, 1025 (9th Cir. 2001) ("courts have routinely allowed propensity evidence in sex-offense cases.... In many American jurisdictions, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery, and child molestation"); United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998) (determining that, under Rule 413 of the Federal Rules of Evidence, the introduction of prior sexual offenses to demonstrate a defendant's propensity to commit the charged sexual offense does not constitute a violation of due process).

Here, the trial court considered the nature, relevance, remoteness, likelihood of confusing the issues, prejudicial impact, and burden on petitioner in defending against the uncharged offense involving S.  (See ECF No. 16-3 at 43-49.)  The undersigned's review of the record reveals nothing unreasonable about the trial court's findings as it concerns this evidence, despite petitioner's arguments to the contrary.  That ruling regarding the admission of this evidence cannot be said to have "so fatally infected the proceedings as to render them fundamentally unfair," in violation of petitioner's due process rights.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  The Court of Appeal found the trial court's ruling appropriate under the specific circumstances of this case, and the undersigned agrees with the state court's assessment following review of this record.  The admission of the evidence at issue did not render the trial fundamentally unfair.

Notably too, the jury was instructed with CALCRIM No. 303 which informed the jury that evidence that is admitted for a limited purpose may not be considered for any other purpose but the limited purpose.  (ECF No. 16-5 at 212; ECF No. 16-2 at 18.)  It was also instructed with CALCRIM No. 375 which informed the jury that the prosecution had to prove the uncharged act by a preponderance of the evidence.  (ECF No. 16-5 at 216-17; ECF No. 16-2 at 20-21.)  In addition, it instructed the jury that the other crimes evidence could only be used to compare its

18

similarity, or lack thereof, with the charged offense, and for no other purpose.  (ECF No. 16-5 at 217; ECF No. 16-2 at 21.)  "A jury is presumed to follow it instructions."  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).  Petitioner has not overcome this presumption nor does the record establish otherwise.  Petitioner cannot show that any error had a "substantial or injurious effect or influence in determining the jury's verdict."  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

In sum, because the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, and because the admission of the evidence cannot be said to have so fatally infected the trial rendering it fundamentally unfair, petitioner's challenge to the admission of this evidence must fail.  Therefore, the undersigned recommends this claim be denied.

B.     *Lesser Included Offense Instructions*

Petitioner claims that his constitutional rights to due process and a fair trial were violated by the trial court's failure to give lesser included offense instructions regarding battery related to counts three, four, seven and eight.  (ECF No. 1 at 8-10 & ECF No. 20 at 60-68.)  Respondent argues "the United States Supreme Court has never held that federal Constitution requires the consideration of lesser offenses in a non-capital case, even when there is substantial supporting evidence.  And, even if such a requirement was clearly established, it was reasonable for the state court to conclude that there was not substantial supporting evidence in this particular case," and that petitioner has failed to demonstrate actual prejudice warranting habeas relief.  (ECF No. 13 at 19-23.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant next contends that with regard to the charges in counts three and four (lewd and lascivious acts) and counts seven and eight (sexual intercourse), the trial court failed in its sua sponte duty to instruct the jury on the lesser included offense of battery.
>
> "An uncharged offense is included in a greater charged offense if either (1) the greater offense, as defined by statute, cannot be

committed without also committing the lesser (the elements test), or (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 349, italics omitted; see *People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*).) "Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense." (*Parson*, *supra*, 44 Cal.4th at p. 349.) "Under the accusatory pleading test, a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former." (*Ibid.*)

The elements of the lewd or lascivious act offenses include the following: (1) the willful commission of a lewd or lascivious act, that is, an act which is lustful, immoral, seductive, or degrading; (2) upon or with the body, or any part thereof, of a child under 14 years of age; (3) with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of the defendant or the child. (§ 288, subd. (a); *People v. Memro* (1985) 38 Cal.3d 658, 697, overruled on another ground by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; *People v. Webb* (1958) 158 Cal.App.2d 537, 542.) Any touching of a child under the age of 14 violates section 288, subdivision (a), even if the touching is outwardly innocuous and inoffensive, if the touching is accompanied by the requisite intent. (*Shockley*, *supra*, 58 Cal.4th at p. 404.)

A battery is any willful and unlawful use of force or violence upon the person of another. (§ 242.) "Willful" means intentional. (*People v. Wright* (2002) 100 Cal.App.4th 703, 721, fn. 21.) Any harmful or offensive touching constitutes an unlawful use of force or violence. (*Shockley*, *supra*, 58 Cal.4th at pp. 404–405.)

The California Supreme Court recently held that, under the elements test, battery is not a lesser and necessarily included offense of committing a lewd or lascivious act upon a child under the age of 14 years. (*Shockley*, *supra*, 58 Cal.4th at p. 406.) In accordance with *Shockley*, *supra*, 58 Cal.4th 400, we reject defendant's sua sponte instruction claim with regard to counts three and four under the elements test.

The convictions on counts three and four were based on defendant putting his penis in E.'s vagina. Assuming that battery is a lesser and necessarily included offense under the pleading test for counts three and four, and that battery is also a lesser and necessarily included offense for the convictions on counts seven and eight (sexual intercourse), we nevertheless conclude the trial court had no sua sponte duty to instruct on battery because there was no substantial

evidence upon which the jury could have concluded that defendant committed a battery but not the charged offenses.

A trial court has a sua sponte duty to instruct on a lesser included offense only if there is substantial evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. (*Shockley*, *supra*, 58 Cal.4th at p. 403; *People v. Souza* (2012) 54 Cal.4th 90, 116.) The purpose of the rule is "'to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence. [Citation.]' In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense." (*Shockley*, *supra*, 58 Cal.4th at pp. 403–404.)

At trial defendant denied E.'s allegations. Defendant said he did not have sex with E. Defendant did not admit he touched E. in any harmful or offensive manner. Defendant also denied putting his penis inside E. during the pretext call. When detectives said, during the interrogation, that they knew defendant put his penis in E.'s vagina, defendant was equivocal. But then he said his penis "never went in." While defendant admitted to some sexual contact with E. during the interrogation, at trial he disavowed any admission he made during the interrogation. Defendant said he lied to the interrogating officers. Consistent with defendant's denials, defendant's trial counsel said there were no lesser included offenses on which the trial court must instruct the jury.

E., on the other hand, testified about multiple occasions when defendant put his penis inside her vagina, causing E. to feel discomfort and pain. E. had consistently reported that defendant's penis went inside her vagina. E. testified at trial that a suggestion by a therapist she had been seeing recently caused her to question whether she accurately remembered what had happened. But E. remembered defendant applied a liquid on his penis and placed his penis inside her vagina. She then felt discomfort and pain. She said defendant's penis went in and out, and after that white stuff came out. E. recalled another occasion when defendant put his penis in her vagina from behind, while E. was on her hands and knees. E. said it hurt when defendant put his penis inside her. After describing the various sexual acts she and defendant had engaged in, E. confirmed defendant had actually done the things she remembered and testified about at the trial. E. testified she was being accurate when she told detectives defendant's penis went inside her body. As the prosecutor said, the jury will either believe defendant or E.

On this record, no substantial evidence supported a finding that

defendant was guilty of battery, but not sexual intercourse or a lewd or lascivious act with a child based on the act of putting his penis in E.'s vagina. Accordingly, the trial court had no duty to sua sponte instruct on battery. (*People v. King* (2010) 183 Cal.App.4th 1281, 1319 ["'A trial court need not ... instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime ...'"].)

(People v. Gomez, slip op. at 15-18, fn. omitted.)

Federal habeas corpus review is only available to correct violations of federal law. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. at 68. The Supreme Court has held that in capital murder cases, the defendant has a constitutional right to have the jury instructed on a lesser included offense. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, in Beck, the Supreme Court reserved judgment on whether the Due Process Clause also requires instruction on lesser included offenses in noncapital cases. Id. at 638, n.14.

The Ninth Circuit has held the "[f]ailure of a state court to instruct on a lesser [included] offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (citing Grech v. Wainwright, 492 F.2d 747, 748 (5th Cir. 1974)); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (declined to find constitutional error arising from the failure to instruct on lesser included offenses in noncapital cases). The Bashor court noted, however, that a defendant's right to adequate jury instructions on his theory of the case could, in some cases, constitute an exception to this general rule. Id.

A claim that a state court violated a federal habeas petitioner's due process rights by omitting a jury instruction requires a showing that the error so infected the entire trial that the resulting conviction violated due process. Henderson v. Kibbe, 431 U.S. 145, 155 (1977); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). In cases in which a petitioner alleges that the failure to give an instruction violated due process, his burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. Here, petitioner fails to meet this heavy

burden.

Again, the Supreme Court has never explicitly held a non-capital case defendant has the right to a lesser included offense instruction. Bashor, 730 F.2d at 1240 (citing Keeble v. United States, 412 U.S. 205, 213 (1973)). However, even considering the exception in Bashor, there was no constitutional error in this case. The Court of Appeal found no error, ruling that the trial court had no sua sponte duty to instruct the jury regarding battery as to the counts in question because there was no substantial evidence to support the crime of battery.

More particularly, the Court of Appeal found no error because "no substantial evidence supported a finding that defendant was guilty of battery, but not sexual intercourse or a lewd and lascivious act with a child based on the act of putting his penis in E.'s vagina. Accordingly, the trial court had no duty to sua sponte instruct on battery." (ECF No. 13, Ex. A at 47.) The Court of Appeal's recitation of the facts and evidence relating to counts three, four, seven and eight, as well as its analysis thereof, are accurate, and the undersigned cannot say that the Court of Appeal was clearly erroneous for ruling that the record did not support giving instructions for the crime of battery.

Here, the trial court's failure to instruct the jury on the lesser included offense of battery does not present a federal question. And no exception to the general principle applies in this case because the omission of the instruction was not prejudicial given the lack of substantial evidence regarding the crime of battery. Petitioner did not overcome his heavy burden by showing the failure to instruct infected the entire trial in violation of his due process rights. For these reasons, the undersigned recommends this claim be denied.

C.    *Count Eleven Did Not Plead a Public Offense*

Petitioner's final claim is that the conviction relating to count eleven "denied him his state-created liberty interests and rendered his trial fundamentally unfair" because it failed to state a "public offense." (ECF No. 1 at 11-12 & ECF No. 20 at 69-72.) Respondent contends the state court's adjudication of his claim is neither contrary to, nor does it involve an unreasonable application of, Supreme Court precedent, thereby precluding relief by way of federal habeas. (ECF No. 13 at 23-27.)

23

The last reasoned rejection of petitioner's claim is the decision of the California Court of

Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed

this claim as follows:

> Defendant further argues his count eleven conviction for a lewd and lascivious act must be reversed because count eleven of the information and the verdict form for that count do not state a public offense.
>
> An accusatory pleading must contain a statement of the public offense or offenses charged therein. ([Pen. Code,] § 950.) The statement of the offense may be in the words of the statute or in any words sufficient to give the accused notice of the offense of which he is accused. (§ 952.) The purpose of the pleading is to provide the defendant with notice of the offense charged so the defendant may have a reasonable opportunity to prepare a defense and is not taken by surprise by the evidence offered at trial. (*People v. Stone* (2009) 46 Cal.4th 131, 141; *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 936.) A defective pleading will not result in a reversal of the judgment unless a substantial right of the defendant is adversely affected. (§ 1404 ["Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."]; *People v. Paul* (1978) 78 Cal.App.3d 32, 44 (*Paul*); *People v. Massey* (1957) 151 Cal.App.2d 623, 649; *People v. Schoeller* (1950) 96 Cal.App.2d 61, 64.) A defendant may raise the claim that the information does not state a public offense on appeal even though he did not raise the claim in the trial court. (*Paul*, *supra*, 78 Cal.App.3d at p. 42; *Schoeller*, *supra*, 96 Cal.App.2d at p. 62.)
>
> Count eleven charged defendant with violating section 288, subdivision (a), in that defendant "did willfully, unlawfully, and lewdly commit a lewd and lascivious act, to wit: defendant asking victim to use massager on his groin area, upon and with the body and certain parts and members thereof of [K.], a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant and the said child." Defendant says count eleven does not allege a violation of section 288, subdivision (a) because it does not allege a touching, which is a required element of a section 288, subdivision (a); instead, count eleven charges defendant with "asking" K. to perform a lewd act.
>
> The record shows, however, that defendant was aware of the basis for count eleven. (*Paul*, *supra*, 78 Cal.App.3d at pp. 42–44 [the People's failure to allege an overt act in the information, as required by statute, did not warrant reversal of the conviction where the defendant was aware of the evidence against him and of the overt acts upon which the charge was based].) Defendant's pretrial briefs state K. reported that defendant made K. touch defendant's genitals with a massager. At trial defendant did not object on the ground of surprise or relevancy when K. testified she rolled a massager on

defendant's penis upon defendant's instruction.

Additionally, the trial court instructed the jury, pursuant to CALCRIM No. 252 and 1110, that a touching is required in order to violate section 288, subdivision (a). K.'s testimony supported the verdict on count eleven by showing that defendant willfully caused a child to touch defendant's body. (*People v. Lopez* (2010) 185 Cal.App.4th 1220, 1229; see e.g., *People v. Babcock* (1993) 14 Cal.App.4th 383, 385 [the defendant was convicted of committing lewd or lascivious acts upon a child under the age of 14 years by use of force where he took the child's hand and placed it on his crotch]; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 48, disapproved on another point in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 [forcing minor to rub defendant's genitals is a lewd act].) We presume the jury followed the trial court's instruction when it found defendant guilty on count eleven. (*People v. Lauman* (1921) 187 Cal. 214, 219.)

Defendant's trial counsel asked K., during cross-examination, whether she had gone to the dentist on the day of the alleged misconduct and whether the dentist gave her a gas which made her feel numb and dizzy. Defendant's trial counsel argued to the jury that K. was "out of it" as a result of her dental procedure. He argued K.'s description of what happened did not make sense. Defense counsel also argued K. made up a story about the massager because she saw E. getting more attention, and K. "wants to be included." Defendant does not show how the manner in which count eleven was charged misled him in the preparation of his defense or otherwise resulted in prejudice to him. We will not reverse the judgment in the absence of a showing of prejudicial error. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside ... in any cause ... for any error as to any matter of pleading ... unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Codina* (1947) 30 Cal.2d 356, 360 [even if pleading was defective, reversal of the judgment was not warranted where the trial proceeded as if the omitted allegation was in the information; defendant did not notice the omission; and the trial court properly instructed the jury as to the elements of the offense]; *Paul, supra*, 78 Cal.App.3d at p. 44.)

(People v. Gomez, slip op. at 18-21.)

<u>Legal Standards</u>

Petitioner complains "the charging papers here did not allege any touching, but, instead, they merely allege petitioner asked for such touching to occur ...." (ECF No. 1 at 12.)

As to consideration of this issue, the Ninth Circuit has explained:

The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense. See U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and

cause of the accusation...."); *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ("It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."); *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence...."); *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend."). This guarantee is applicable to the states through the due process clause of the Fourteenth Amendment. See *Cole*, 333 U.S. at 201, 68 S.Ct. 514 ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). When determining whether a defendant has received fair notice of the charges against him, we begin by analyzing the content of the information. See *Cole*, 333 U.S. at 198, 68 S.Ct. 514; see also *James v. Borg*, 24 F.3d 20, 24 (9th Cir.1994) (holding that to determine whether the defendant had adequate notice, "the court looks first to the information," the "principal purpose of [which] is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense") (citing *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir.1987)); cf. *Stirone*, 361 U.S. at 217, 80 S.Ct. 270 (stating that under the Fifth Amendment's right to a grand jury indictment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him").

In *Cole*, the Court carefully examined the information, concluding that defendants had not been sufficiently apprised of a charge under § 1 of an Arkansas statute, the provision that the state supreme court relied upon when affirming their convictions. 333 U.S. at 197–98, 200, 68 S.Ct. 514. Instead, as the Court explained, the defendants had "read the information as charging them with an offense under § 2 of the Act," in no small part, because while the information itself did not cite to either statute, the "language describing the offense charged in the information [was] substantially identical with the ... language of § 2 of the Arkansas Act," which "describes an offense separate and distinct from the offense described in" § 1. *Id.* at 198, 200, 68 S.Ct. 514. Thus, to satisfy the Sixth Amendment, "an information [must] state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against." *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir.1986) (citing *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). An explicit citation to the precise statute at issue is best, but a "brief factual recitation in the information" can also suffice. *Id.* at 1381.

Besides the information, *Cole* also considered as part of its due process analysis the content of jury instructions. See 333 U.S. at 199, 68 S.Ct. 514. The Court did not, however, treat those instructions as a means of providing defendants with notice of the charges against

them. Rather, the Court looked to the instructions only as evidence of the ultimate grounds for conviction. In particular, *Cole* explained that because the trial judge instructed the jury on the elements of § 2 "at the request of the prosecuting attorney," "[w]ithout completely ignoring the judge's charge, the jury could not have convicted petitioners for having committed the separate, distinct, and substantially different offense defined in § 1." *Id.* at 199–200, 68 S.Ct. 514. As a result, by affirming defendants' convictions on the grounds that they had violated § 1—"when in truth they had been tried and convicted only of a violation of a single offense charged in § 2"—the state supreme court, *Cole* held, had deprived defendant of their due process rights. *Id.* at 202, 68 S.Ct. 514; see also *id.* at 201, 68 S.Ct. 514 ("If, as the State Supreme Court held, petitioners were charged with a violation of § 1, it is doubtful both that the information fairly informed them of that charge and that they sought to defend themselves against such a charge; it is certain that they were not tried for or found guilty of it.") (relying on *De Jonge v. Oregon*, 299 U.S. 353, 362, 57 S.Ct. 255, 81 L.Ed. 278 (1937)).

*Cole* was, of course, a Supreme Court case, as was *De Jonge* before it. We therefore conclude that, for purposes of AEDPA's "clearly established Federal law" requirement, it is "clearly established" that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. To satisfy this constitutional guarantee, the charging document need not contain a citation to the specific statute at issue; the substance of the information, however, must in some appreciable way apprise the defendant of the charges against him so that he may prepare a defense accordingly.

Gautt v. Lewis, 489 F.3d 993, 1002-04 (9th Cir. 2007), fns. omitted.

In determining whether a defendant had adequate notice of the criminal allegation, a review commences with the charging document. Due process requires that the formal charge set forth the elements of the offense "with sufficient clarity to apprise a defendant of what he must be prepared to defend against." Givens v. Housewright, 786 F.2d 1378, 1380 (9th Cir. 1986) (information inadequate to inform defendant of special elements of murder charge).

In addition to the charging document, a defendant may be adequately informed of the nature of the charges by "a complaint, an arrest warrant, [] a bill of particulars[, or] during the course of a preliminary hearing." Sheppard v. Rees, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989). Moreover, a defendant may receive "constitutionally adequate notice" of a theory regarding the commission of the charged crime "from the testimony" of witnesses during the trial. Morrison v.

27

Estelle, 981 F.2d 425, 428 (9th Cir. 1992); Murtishaw v. Woodford, 255 F.3d 926, 954 (9th Cir. 2001) (defendant's "actions at trial" in responding to prosecution evidence "suggest that he actually had notice of the felony murder theory"). Where the prosecution requests a jury instruction at the conclusion of a trial that conforms to evidence introduced during the case, due process is satisfied when the defense has sufficient time and notice to prepare for closing argument regarding the new theory of the case. Stephens v. Borg, 59 F.3d 932, 935 (9th Cir. 1995).

"The question is whether the accused was taken by surprise" by a change in trial tactics or circumstances. Gray v. Raines, 662 F.2d 569, 574 (9th Cir. 1981) (Tang, J., concurring). A defendant may not be convicted based on a charge or legal theory "that was neither subject to adversarial testing, nor defined in advance of the proceeding." Sheppard, 909 F.2d at 1237. Sheppard was a "narrow ruling" in which the state conceded that the prosecution "ambushed" the defendant with a new legal theory of which he had no notice before or during trial. Morrison, 981 F.3d at 428.

A violation of the constitutional right to notice of the nature of a criminal charge is subject to harmless error analysis on habeas review. Gautt, 489 F.3d at 1015–16 (declining to conclude that due process violation was structural error requiring automatic reversal). Harmless error review requires a federal court to examine whether it believes that the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 637. Reversal is required where "the record is so evenly balanced that a 'conscientious judge is in grave doubt as to the harmlessness of an error.'" Gautt, 489 F.3d at 1016 (quoting O'Neal v. McAninch, 513 U.S. 432, 438 (1995)).

                         Analysis

A review of the record reveals the Third District Court of Appeal's determination is neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

////

////

////

The state appellate court accurately found the information specifically alleged a violation of California Penal Code section 288(a)[6] and that petitioner "was aware of the basis for count 11" because "pretrial briefs state K. reported that defendant made K. touch defendant's genitals with a massager."  (ECF No. 13, Ex. A at 48-49.)  See, e.g., ECF No. 16-1 at 59 (petitioner's motion: "Following the SAFE interview, Katelyn disclosed to her sister Elaina that their father had touched her clothed genitals with a massager and that she had touched his clothed genitals with the same massager.  Katelyn disclosed the alleged sexual abuse during a second SAFE interview recorded on July 8, 2011") (same at ECF No. 16-1 at 92, 103) & ECF No. 16-1 at 69 (People's motion:  "During the July 8th, SAFE interview, Katelyn G. disclosed that the defendant used a massager on her vagina and she in turn had to use it on the defendant. Katelyn G. indicated this happened only one time in the defendant's bedroom").  Further, the state appellate court correctly noted that petitioner failed to object on the ground of surprise or relevancy during K.'s testimony. (ECF No. 13, Ex. A at 49.)  See ECF No. 16-3 at 231-279 (no objection on the ground of surprise or relevancy during K.'s trial testimony).

Next, the state appellate court noted the jury was instructed pursuant to CALCRIM Nos. 252 and 1110 – "that a touching is required in order to violate" California Penal Code section 288(a) and that K.'s testimony supported the jury's verdict "by showing that defendant willfully caused a child to touch defendant's body."  (ECF No. 13, Ex. A at 49.)  This finding was reasonable.  See ECF No. 16-2 at 17, 21-22 (relevant jury instructions given) & ECF No. 16-3 at 235 (K. testified her dad touched her in a "bad way," a bad touch having been defined as one involving "private parts"), 241 (K. testified her dad touched her with "a massage thing" on her "private parts"), 242 (K. testified her dad "rolled" or "rubbed" the "massage thing" over "her

---

[6] For charges pursuant to California Penal Code § 288, "credibility is typically the major issue ..., with most defendants denying not just specific incidents on specific dates, but denying that any abuse ever occurred at all. Defendants can take advantage of a variety of effective defenses even in the absence of specific dates," or even when multiple lewd acts are alleged, such as denying the allegations, developing positive character evidence, developing evidence of the victim's motive to lie, or showing an alibi for some of the incidents, which, if found to be credible, could cast doubt on all the allegations.  Brodit v. Cambra, 350 F.3d 985, 989 (9th Cir. 2003), cert. denied, 542 U.S. 925 (2004) (citing People v. Jones, 51 Cal.3d 294, 319 (1990)).

private parts"), 242-43 (K. testified her dad asked her to do the same to him and showed her how to do it), 243 (K. rolled it on his private part).

Because petitioner did not offer a defense that was dependent upon whether he merely asked K. to touch him – clearly, his defense was that K. made up the entire story (see ECF No. 16-3 at 238-71) – he cannot show that any inadequacies in the notice he received had a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht v. Abrahamson, 507 U.S. at 637.

For all the foregoing reasons, the undersigned recommends this claim be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 11, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/gome0305.157